In re Theos Fedro Holdings, Mark LaBarrell appearing for appellant, Garland D Murphy IV appearing for appellee. All right, Mr. LaBarrell, did you want to reserve any time for rebuttal? Yes, I would. I would reserve 10 minutes for rebuttal. 10 minutes, all right. So keep an eye, you can see the timer there, so please keep an eye on it. I'll try to remind you when your time is coming up, but it's your responsibility. Thank you. Good morning, judges. It's a privilege to be here this morning and to present appellant's issues. As Judge Brand has indicated, you're facts in this particular case are extremely important because in a world of positive law that we're in now, issues of equity are indeed important and relevant to the issuance of justice. And here, appellant's position is that there was abusive discretion as set forth in appellant's opening brief, and that the matter was really one of a question of relief for counsel's neglect in filing opposition, timely opposition, to a motion for summary judgment. And that was immediately addressed after that failure, immediately in the sense of in the first several weeks, less than a month, I believe. And a motion was made to seek relief for that omission, inadvertent mistake, neglect. And that motion was denied. And the basis of the appeal is it was improperly denied that the holdings and the law in the Dix case, which emanated from the Ninth Circuit BAP and then was recognized by the Supreme Court and pioneer, that that evolution of law is what should have been used and focused on in the hearing by appellant requesting relief from failure to file opposition to a motion for summary judgment. So, Mr. Liberale, let me ask you a question. Two questions, really. The first question is that Judge Montali seemed to deny your motion because he said your client didn't have standing to bring the lawsuit. And so it would have been really futile to allow the opposition. What is your response to that? Well, my response to that goes back to the equitable principles, Your Honor, and the facts. And the facts is that appellant made a contract with appellee and gave them a deed of trust, an interest in their property, and in turn received or was supposed to receive money for that exchange. And, of course, he had to promise to create this theos entity, and that theos entity was created. But does that mean when the theos entity is created, that it vitiates, excuse me, it vitiates all of his rights, all of his rights and interests? He's the only sole member of theos, which was an LLC created at the last hour within 24 hours of the funding of this loan. Under pressure, it was created. And he can't be just separated. He can't be just separated from theos. I thought that was the whole purpose of creating theos. I thought if he created a different entity that is a different entity and treat it as such under the law, that is the purpose for creating the entity. So when you say you don't want it to have vitiated his rights, what were his rights? Because there's a note, there's a deed of trust, there's transactions between theos and Pender, but there's no contract between Mr. Achilles and Pender. So what rights were vitiated? Well, number one, the rights that were vitiated was that it was based on a promise. So the initial party, or theos as an individual and Pender, and they have a deal. And they have a money, X amount. You who? Theos will get money. Theos will get money, which is Achilles because- No, it's not. It's theos. That's why theos was a plaintiff. That's why theos filed bankruptcy. That's why the Chapter 11 trustee was appointed and became the Chapter 7 trustee, and that's lost in front of Judge Montali. So that's all to the side. Now we're just dealing with Mr. Achilles, and I still haven't heard what rights were vitiated as to Mr. Achilles apart from theos. Apart from theos. Well, Mr. Achilles had filed a lawsuit, and in that lawsuit are his personal claims for fraud, which remained. And those claims remain. They can't just disappear. And without adjudication, without adjudication, they've been wiped out. Is that the only claim that really needs to be litigated, in your opinion, then, is the fraud claim? Well, there's- yeah, basically, it comes down to fraud. There's- right. If I could follow up, Mr. Liberelli, what you're- am I understanding this right, is that there's fraud in the inducement that there wouldn't have been a transfer to theos if there wasn't for the fraud perpetrated, or the alleged fraud perpetrated against Mr. Achilles. Yes, Your Honor. Where is that- I'm sorry, Judge Frank, go ahead. I'm done. Where is that fraud claim? What complaint as to Mr. Achilles is operative? There was a first amended complaint filed in Superior Court, and when the trustee adopted a good part of that first amended complaint for theos, the claims were left out. The personal claims of Achilles were left out. Well, that's because theos can't assert Achilles' claim. So- but is it your position that as to Mr. Achilles, that fraud claim stated in the first amended complaint is the operative matter to be decided? Yes, Your Honor. You know, right. It's there, it's standing, it has a factual history and background. Mr. Achilles did, it's in the record, perform for two years on time about $28,000 per month he paid- Again, sir, I'm going to stop you there because it's not Mr. Achilles, it's theos. Theos did pay. And the only equitable legal relationship that theos has with the real world is through a human being, Philip Achilles. All right. You've got about six minutes left. Do you want to reserve the rest of your time? Thank you, Your Honor. All right. Mr. Murphy. Thank you, Your Honor. May it please the Court. The Court should affirm Judge Montali's order denying the motion for relief as futile for three primary reasons. First, the appellant has essentially abandoned the arguments made below and the excuses made below for excusable neglect. And Judge Montali could not have made clear errors of judgment or bases ruling on erroneous views of the law as to- Well, we didn't see any findings in Judge Montali's decision. All we found was that in his oral ruling that he said, it's futile, I'm not even sure that Mr. Achilles is the plaintiff. He turned to you or your client to say, Mr. Achilles is a plaintiff? And said, doesn't matter, there's no standing, that's my ruling. And he made no findings on any of the other issues. So what's the basis for us to affirm in that context? Well, Your Honor, that goes to the third reason, which is a futility finding. And it was essentially the motion for relief under Rule 60B1 was futile, would have no- It was a motion filed under 9006. So I'm really not even sure what we're talking about. And your client says that the summary judgment is final. So how could there be a 60B motion? Because 60B motions are only filed from final decisions. That is correct, Your Honor. And that was the first issue we raised in our briefing, which was this is an interlocutory ruling. It is not actually a final ruling. We addressed that with Mr. Labarle and he decided to proceed with his appeal anyway. There are claims that remain pending by Pender against Mr. Labarle's client. But you're avoiding the question a little bit. All right. So it's interlocutory. We get that. Then 60B is not the correct standard then, excusable and neglected. It remains interlocutory. Courts have the ability to revisit any interlocutory decision. So what's the standard? Well, Your Honor, the standard that appellate has argued is 60B1. I'm asking you what the standard is. And I think if the court grants leave to appeal, treats the appeal as a motion for leave and grants the motion, the standard is 60B1 because it would be treated as a final judgment. So the court would have to agree that this is appealable. If it's interlocutory and the court does not grant the motion, grant the notice as a motion for leave, the only resolution then is that the appeal must be dismissed. So can we grant an interlocutory appeal? Yes, the court can by treating this as a motion for leave to appeal, granting that motion and then addressing the merits. And then if we grant interlocutory, it's not final. So we're not under 60B. As Judge Brand indicated, the motion was actually, you know, a request for untimely opposition. So what was the problem with the untimely opposition other than it was untimely? And I guess the ultimate to get to the point is, are you arguing that there is no fraud claimed by Mr. Achilles or that he does not have standing to assert a fraud claim on his own behalf for placing the real property from his trust into Theos? We're arguing, it is difficult to interpret his pleading, but the way I interpret it is that he has attempted with all of his entities, he, Theos Fedro, and as the executor of the trust or the trustee of the trust, that he has attempted to assert a fraud claim. But excerpts of record seven, the claim is that Pender never intended to actually tender the amount they promised to tender to plaintiff in the contract sued upon. That's Theos Fedro. The plaintiff that's a party to the contract is Theos Fedro. And so Mr. Achilles does not have standing to pursue that claim. That's a different claim. Again, it's fraud and inducement, as Judge would make all the payments. And if I put the real property into Theos, I did that, not all payments were made, you fraudulently induced. I understand we're not getting into the merits of that, but that sounds like it states a claim for fraudulent inducement. And that would be Theos Fedro's fraudulent inducement claim because... Go ahead. Yeah, why? Because it was Mr. Achilles who was fraudulently induced to, in theory, create Theos Fedros and, you know, present this vehicle for the loan. Well, Your Honor, the loan documents actually require the entity to own the property. It wasn't a promise of payments in order to induce the creation of the entity and the loan, and that's actually not alleged. But again, that's all Theos Fedro. The promise was for the loan of money, and that is the alleged falsity. We're promising to loan Theos Fedro money. Theos Fedro, in the loan documents, in the excerpt of record that we've provided, represents and warrants that it already owns the property. Otherwise, there would be no security for the loan. And so that is and only can be asserted by Theos Fedro. Representations and warranties it made in the loan documents in exchange for promises by Pender Capital to Theos Fedro. So Mr. Achilles doesn't have a role in that, in making a fraud claim based on the loan documents. But isn't the fraudulent inducement a different claim? Is that it's not a claim based that the loan payments were not made. That's a Theos claim. But it's a claim is that at the time you promised to me, Mr. Achilles, you promised me that you will do certain things in the future. And at the time you made those promises, you had no intent to actually do so. That there was actually fraud in the inducement. And that's different than a claim based on the promissory note or the loan agreement or the other documents that were between Theos and your client. So, Your Honor, the actual fraud claim at excerpts of record seven and eight, incorporating the other allegations, is based solely and entirely on the business loan agreement. This entire issue is based on certain holdback funds that were only listed in the business loan agreement. It was an arrangement where there were certain obligations to the city of San Francisco, to Wells Fargo for a judgment, and certain repairs that would be made to an elevator. And this is the entire basis of Mr. Achilles' claim, that he did not receive those holdback funds because Theos Fedro was in default. So there is no other set of promises that he can point to, nor has he pointed to any other promises. It is solely based on, I, Philip Achilles, did not receive the holdback funds that are listed at excerpts of record 54, the three items in the holdback portion of the business loan agreement. And so there is no other fraudulent promises, fraudulent representations. Mr. Achilles is relying on the holdback portion, and that is a Theos Fedro claim. That's why he does not have standing. He can't say that the promises made in the business loan agreement, in the holdback section, for that $515,000 to Theos Fedro is fraud for me, who was not a party to that agreement, and those promises were not made to me. And that is why he lacks standing, and Judge Montali was correct for that reason. Your Honor, Mr., continuing with my argument, the abandonment issue, Mr. Labarle did not address, and I will address it only to say there is no Section 554 abandonment issue here. There is no informal abandonment under Ninth Circuit precedent, including the Catalone case and the other cases that we've cited. There was no notice, no hearing, and no evidence of any kind that the trustee intended to abandon any of Theos Fedro's claims. to Mr. Achilles or as the trustee of his trust. So that issue, were it not waived, because it was not raised before Judge Montali, fails as a matter of law. And then, Your Honor, to go to the final issue, which is the excusable neglect issue. It is true that Judge Montali did not address excusable neglect, at least to find the specific factors. What Judge Montali did was exactly, Judge Brand, as you recognize, find that it was futile to even get into that analysis, which is the same sort of analysis that courts have routinely and regularly engaged in, in deciding such things as whether to grant a motion for relief under the same or similar circumstances, whether to allow claims to be repled after dismissal. If there is no to survive summary judgment, then the courts deny leave to amend and deny motions for relief from dismissal as futile. It's a preservation of scarce judicial resources, and it certainly promotes judicial efficiency. We've cited the cases. I know the Court is familiar with them in our papers, and several of them involve situations such as a party that failed to receive notice or claim that they failed to receive notice of summary judgment, and the Court declined to vacate the summary judgment, even though, for example, in United States v. Burbridge, the Court noted that excusable neglect might justify relief, but it would be futile to grant that relief, and therefore there was no reason to waste the party's and the Court's resources in vacating the summary judgment. So, Your Honor, we believe that Judge Montali did not abuse his discretion in following what is a pretty regular practice in the district courts and in the bankruptcy courts, not to waste time doing an analysis that would end up being futile where a party lacks standing. One final note, and I'll welcome any additional questions. Note only that the Court generally does not allow issues to be raised for first time on appeal, and that's important here because the excuse offered by Mr. Achilles on appeal is different than the excuse he offered to Judge Montali. How can Judge Montali have abused his discretion in finding that I'm not going to do the excusable neglect analysis for this excuse that I didn't know that the summary judgment notice applied to me, I didn't review it, I didn't have time, but now that excuse is I didn't know that the stay had been, or the suspension had been vacated. It's inappropriate for Judge Montali to be put on the spot for an excuse that the appellant did not raise below, and that's similar to the case we cited in our papers out of the Southern District of New York where a court in this type of context addressing an excusable neglect argument said, if you don't raise the excuse below, if you don't offer the evidence below, you can't raise it on appeal. That's the Laird Construction Corporation case. For those reasons, the, pardon me, appellee asked the Court to affirm and find that Judge Montali did not abuse his discretion in finding that the motion for relief was futile and denying the motion on that basis. I will welcome any questions. If not, I yield back my time. Great. Any questions? No. Thank you very much, Mr. Murphy. Thank you. Okay, Mr. Liberali, you've got, I think, about six minutes. Yes, just a few points that I'd like to make, and that is that there was no default on this loan. The loan came up for renewal, and Mr. Achilles demanded that 500, Theos demanded that he be given credit for the money that was not paid out to Theos, and that's when things broke down because Pender refused and refused and continued to refuse to this day and held back money, which it has taken back for itself from the escrow. So, Pender received the property, deed of trust, foreclosed on the deed of trust. Pender has the deed of trust. It has Theos' and Mr. Achilles' money, and it has the interest that it's charged, and so what we have is a concatenation of events. Fraudulent representations are there. They're valid. They're real. They were made, and they were manifest, and Mr. Achilles did have standing, and the motion for summary judgment defaults on the fact of council not having timely opposed it, and should that have happened, what the result would have been. One can only speculate about that, but that's the issue here is should there have been a hearing on the motion for summary judgment, and on behalf of appellant, we respectfully request and appreciate the wisdom and discretion of the court, and thank you for your consideration. All right. Thank you. This matter will be submitted. Thank you very much. Madam Clerk, would you call the next case?
judges: Brand, Spraker, and Corbit